

IN THE

# Court of Appeals of Indiana

Jacob McGee,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Feb 19 2025, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 19, 2025

Court of Appeals Case No.
24A-CR-1312

Appeal from the Marion Superior Court

The Honorable Charles F. Miller, Judge
The Honorable Matthew E. Symons, Magistrate

Trial Court Cause No.
49D29-2308-F5-24658

**Opinion by Judge Vaidik**
Judges Tavitas and Felix concur.

**Vaidik, Judge.**

## Case Summary

[1] Jacob McGee was convicted of Level 5 felony possession of a machine gun for possessing a Glock 22 handgun with a machine-gun conversion device attached to it. He now appeals, arguing Indiana's machine-gun ban violates his Second Amendment right to bear arms and, in the alternative, that the evidence is insufficient to prove he knew the conversion device made his gun a machine gun.

[2] In *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the United States Supreme Court established a two-step framework for analyzing Second Amendment claims. The first step is determining whether the Second Amendment's plain text covers an individual's conduct. We agree with the overwhelming number of federal district courts that have determined under step one of *Bruen* that the Second Amendment does not protect machine guns because they are dangerous and unusual. We also determine that the evidence is sufficient to prove that McGee knew the conversion device made his gun a machine gun. We therefore affirm the trial court.

## Facts and Procedural History

[3] In August 2023, Indianapolis Metropolitan Police Department officers were conducting surveillance at an apartment complex when they spotted a group of six people. Two of them, who appeared to be juveniles, were carrying handguns. The officers stopped the group, and McGee, then eighteen years old,

admitted possessing a Glock 22, which had a machine-gun conversion device—also known as a "Glock switch"—attached to the back. Tr. p. 38; *see also* Ex. 1. A Glock switch "can convert a semi-automatic handgun into a fully automatic handgun, which would make it a machine gun." Tr. p. 38. When the officers asked McGee if he knew what was attached to his gun, McGee responded that it was a "switch." Ex. 2, 3:52-3:57. The officers then asked McGee if he knew what a switch does, and he said, "I think so. I don't know." Tr. pp. 59, 63-64.

[4] McGee was arrested and charged with Level 5 felony possession of a machine gun under Indiana Code section 35-47-5-8. Before trial, McGee moved to dismiss the charge, arguing that Section 35-47-5-8, which "categorically ban[s] the possession of one type of firearm (machine guns)," violates his Second Amendment right to bear arms. Appellant's App. Vol. II p. 58. The trial court disagreed and denied the motion.

[5] A bench trial was then held. McGee testified that the day before he was arrested, he purchased the Glock 22 in a private sale for $800. McGee said the switch was attached to the gun when he bought it and the seller told him "what it was." Tr. p. 57. When asked what a switch does, McGee testified that it "make[s] your gun shoot fast basically." *Id.* He claimed, however, that he thought the switch was "[l]ike a binary trigger," which releases one bullet when the trigger is pulled and then another when it's released, and that he didn't know a switch makes a gun fire "multiple bullets . . . when you pull[] the trigger." *Id.* at 58. The trial court found McGee guilty:

The defendant is confronted with the specific weapon. He indicates it has a switch on it. There is indication that he understands to some degree . . . what the switch is. . . . The fact remains the defendant knew he was not buying a normal handgun. He understood there was something on there that was going to amplify the abilities of that gun to fire in more than a . . . semi-automatic function. I believe that . . . meets the element of knowingly.

*Id.* at 68. The court sentenced McGee to four years, with two years executed on community corrections and two years suspended to probation.

[6]    McGee now appeals.[1]

## Discussion and Decision

### I. Section 35-47-5-8 does not violate McGee's Second Amendment right to bear arms

[7]    McGee challenges the constitutionality of Section 35-47-5-8. The constitutionality of a statute is a question of law that we review de novo. *Church v. State*, 189 N.E.3d 580, 585 (Ind. 2022).

[8]    Section 35-47-5-8 provides that "[a] person who knowingly or intentionally owns or possesses a machine gun commits a Level 5 felony." Indiana Code section 35-31.5-2-190, in turn, defines "machine gun":

---

[1] We held oral argument at Indiana University Northwest in Gary on February 7, 2025. We thank counsel for their presentations and Indiana University Northwest for its hospitality.

(a) "Machine gun" means a weapon that:

> (1) shoots;

> (2) is designed to shoot; or

> (3) can be readily restored to shoot;

automatically more than one (1) shot, without manual reloading, by a single function of the trigger.

(b) The term includes:

> (1) the frame or receiver of a weapon described in subsection (a);

> (2) a:

>> (A) part designed and intended solely and exclusively; or

>> (B) combination of parts designed and intended;

> for use in converting a weapon into a machine gun; and

> (3) any combination of parts from which a machine gun
> can be assembled if such parts are in the possession or
> under the control of a person.[2]

McGee doesn't dispute that his Glock 22 with the switch qualifies as a machine gun under Indiana law. *See* Appellant's Reply Br. p. 4. Instead, he argues that Section 35-47-5-8, as applied to him, violates his Second Amendment right to bear arms.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Second Amendment protects an individual's right to keep and bear arms for self-defense. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 8-9 (2022); *United States v. Heller*, 554 U.S. 570, 592 (2008). This right, however, is "not unlimited." *Bruen*, 597 U.S. at 21; *Heller*, 554 U.S. at 626; *United States v. Rahimi*, 602 U.S. 680, 690 (2024). "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any

---

[2] Federal law likewise prohibits the possession of a "machinegun." *See* 18 U.S.C. § 922(o). "Machinegun" is defined as:

> [A]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b); 18 U.S.C. § 921(a)(24).

weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 597 U.S. at 21 (quotation omitted). According to the United States Supreme Court, there is a "historical tradition of prohibiting the carrying of dangerous and unusual weapons," which means that "the possession and use of weapons that are in common use" are protected by the Second Amendment. *Id.* (quotations omitted).

[10] In *Bruen*, the United States Supreme Court established a two-part framework for determining whether a gun regulation violates the Second Amendment:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

597 U.S. at 17 (quotation omitted); *see also United States v. Just*, No. CR23-78-BLG-SPW, 2025 WL 264056, at *2 (D. Mont. Jan. 22, 2025) ("Courts have called the *Bruen* analysis a two-step test."). In other words, the first step is determining whether the Second Amendment's plain text covers an individual's conduct. If it does, the Second Amendment presumptively protects that conduct. Courts must then proceed to the second step, where the government must demonstrate that the regulation is consistent with our country's historical

tradition of firearm regulation. If the government satisfies its burden, the firearm regulation passes constitutional muster.

[11] McGee asserts that "under the first step of *Bruen*, the plain text of the Second Amendment applies to his conduct of possession of a machine gun":

> The handgun he possessed was an "arm" as contemplated in the Second Amendment. Handguns are weapons "in common use" today for self-defense. The handgun was also "bearable" as it was easily carried. The only difference between this handgun and any other handgun was the addition of a small silver switch at the back of the handgun. The switch allowed the handgun to fire in fully automatic mode, qualifying it as a machine gun under Indiana law.

Appellant's Br. p. 11 (citation omitted). Accordingly, McGee's argument continues, "The burden then shifted to the State to establish under the second *Bruen* test that the challenged statute is consistent with this Nation's historical tradition of firearm regulation." *Id.*

[12] The State responds that we can stop at step one of *Bruen* because "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." Appellee's Br. p. 10; *Heller*, 554 U.S. at 625. The federal appellate courts have uniformly concluded that machine guns are not protected by the Second Amendment based on the historical tradition of prohibiting the carrying of "dangerous and unusual weapons." *See, e.g.*, *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No.*

*LW001804*, 822 F.3d 136, 142 (3d Cir. 2016) ("[U]nder *Heller,* restrictions on the possession of dangerous and unusual weapons are not constitutionally suspect because these weapons are outside the ambit of the amendment. . . . [W]e repeat today that the Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes." (quotation omitted)); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) ("*Heller* deemed a ban on private possession of machine guns to be obviously valid."); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("We agree with the reasoning of our sister circuits that machine guns are 'dangerous and unusual weapons' that are not protected by the Second Amendment."); *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) ("[T]he Second Amendment does not protect Zaleski's personal possession of machine guns."); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Accordingly, under *Heller,* Fincher's possession of the guns is not protected by the Second Amendment. Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use.").

[13]  McGee recognizes this authority but asserts that the United States Supreme Court changed the Second Amendment framework in *Bruen* and that the result is different under *Bruen*. But after *Bruen* was decided in 2022, the federal district courts have overwhelmingly agreed that machine guns are not protected by the Second Amendment under step one of *Bruen*. For example, a district court in Indiana recently explained:

As it relates specifically to firearms like machineguns, the Supreme Court previously stated that "[i]t is of course clear from the face of the [National Firearms Act] that [its] object was to regulate certain weapons likely to be used for criminal purposes . . . ." *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517 (1992). *Heller* echoed that precise point when it noted that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes . . . ." *Heller*, 554 U.S. at 625. *Bruen* drove it home when it quoted *Heller* in saying that "like most rights, the right secured by the Second Amendment is not unlimited." *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 626).

In sum, *Heller* forecloses any challenge to the federal machinegun registration/ban. We know this because that's precisely what *Heller* said: the Second Amendment simply does not extend to "dangerous and unusual weapons" like "short-barreled rifles." *Heller*, 554 U.S. at 627. This is not a novel point. The Supreme Court held as much nearly a century ago in *United States v. Miller*, 307 U.S. 174, 182 (1939). Surely, the same rationale that allows the regulation of short-barreled shotguns applies with equal force to the machineguns that Herriott is alleged to have been selling.

I therefore agree with my colleague Judge Miller when he held that "weapons regulated under [26 U.S.C.] § 5861 are outside the Second Amendment's scope" and whatever changes *Bruen* may have "brought to the Second Amendment landscape, inclusion of dangerous and unusual weapons in the Second Amendment right isn't one such change." *United States v. Sredl*, [No. 3:22-CR-71 RLM-MGG,] 2023 WL 3597715, at *3 (N.D. Ind. May 23, 2023)[, *appeal filed*]. Many other courts have wisely arrived at the same conclusion.

*United States v. Herriott*, No. 2:23-CR-37-PPS-JEM, 2024 WL 3103275, at *3

(N.D. Ind. June 24, 2024) (citations omitted, cleaned up). Other district courts

have held similarly. *See Just*, 2025 WL 264056, at *4 ("Here, the Court finds that machineguns are 'dangerous and unusual weapons' that are not typically possessed by law-abiding citizens for lawful purposes. Therefore, the Second Amendment's plain text does not apply to machineguns. Thus, the *Bruen* analysis ends [at step one]." (quotation omitted)); *United States v. Hudson*, No. 0:23-186-MGL-1, 2024 WL 4241958, at *3 (D. S.C. Sept. 19, 2024) ("Because machineguns are not within the scope of the constitutional right to keep and bear arms for self-defense, the government need not demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation" under step two of the *Bruen* analysis (quotations omitted)); *United States v. Chan*, No. 22-cr-00109-DKW, 2024 WL 4028019, at *6 (D. Haw. Sept. 3, 2024) ("[I]n line with nearly every district court to have addressed [this issue] post-*Bruen*, this Court concludes that machineguns remain 'dangerous and unusual weapons' that are not entitled to the protections of the Second Amendment."); *United States v. Mitchell*, 734 F. Supp. 3d 702, 708 (N.D. Ohio 2024) (holding that since *Bruen* was decided, district courts have "consistently [found] that machineguns are not covered under the plain text of the Second Amendment," which is step one of *Bruen*); *United States v. Bachmann*, No. 8:23-cr-304-VMC-CPT, 2024 WL 730489, at *3 (M.D. Fla. Feb. 22, 2024) ("It is no surprise . . . that courts have continued to hold, post-*Bruen*, that the Second Amendment protections simply do not extend to machineguns." (quotation omitted)); *United States v. Berger*, 715 F. Supp. 3d 676, 693 (E.D. Pa. 2024) ("At bottom, the Second Amendment does not protect machineguns because they are not in common use today for self-defense. The defendants' arguments for

protection of their machineguns fly in the face of *Heller, Bruen*, and every other decision that has ever addressed whether the Second Amendment protects an individual's possession of machineguns. Accordingly, the Motion to Dismiss the machinegun-related charges in the Indictment fails at step one of the *Bruen* analysis."); *see also United States v. Jones-Lusk*, No. CR-24-428-D, 2025 WL 44141, at *2 (W.D. Okla. Jan. 7, 2025); *United States v. Bolden*, No. 4:23CR83 HEA, 2024 WL 5106477, at *2 (E.D. Mo. Dec. 13, 2024); *United States v. Simien*, 655 F. Supp. 3d 540, 553 (W.D. Tex. 2023), *reconsideration denied*.

[14] Again, McGee recognizes this authority but points out that "at least one district court has come to the opposite conclusion." Appellant's Br. p. 14. He cites *United States v. Morgan*, No. 23-10047-JWB, 2024 WL 3936767 (D. Kan. Aug. 26, 2024).[3] There, a federal district court found that a machine gun and a Glock switch "are bearable arms that, under *Bruen*'s first step, are covered by the plain text of the Second Amendment." *Id.* at *2. Turning to *Bruen*'s second step, the court found that "the government has not met its burden . . . to demonstrate

---

[3] At oral argument, McGee provided citations to two additional cases, but neither case addresses machine guns. *See State v. Giannone*, 323 A.3d 360, 383 (Conn. App. Ct. 2024) (addressing semi-automatic rifles, silencers, and large-capacity magazines); *Barnett v. Raoul*, No. 23-cv-00209-SPM, 2024 WL 4728375, at *68 (S.D. Ill. Nov. 8, 2024) (addressing semi-automatic rifles, magazines, and attachments).

Our research, however, has revealed a second district-court case, *United States v. Brown*, No. 3:23-CR-123-CWR-ASH, 2025 WL 429985, at *5 (S.D. Miss. Jan. 29, 2025), which found that although the government had established that machine guns are dangerous, it failed to establish that they are unusual.

through historical analogs that regulation of the weapons at issue in this case are [sic] consistent with the nation's history of firearms regulation." *Id.* at *4.

[15] But *Morgan* is an "outlier." *See United States v. Johnson*, No. 24-20083, 2024 WL 4612888, at *12 (E.D. Mich. Oct. 29, 2024) ("*Morgan* conflicts with the weight of substantial authority. No other case reaches a similar conclusion, and neither party points to any other."); *United States v. Torres-Diaz*, No. 23-410 (FAB), 2024 WL 4870562, at *10 (D. P.R. Nov. 22, 2024) (finding *Morgan* "at odds" with other cases), *report and recommendation adopted,* 2024 WL 5321577 (D. P.R. Jan. 10, 2025). Importantly, *Morgan* is currently on appeal in the Tenth Circuit in Docket No. 24-3141.

[16] We agree with the overwhelming number of federal district courts that have determined under step one of *Bruen* that the Second Amendment does not protect machine guns because they are dangerous and unusual. McGee's Second Amendment challenge thus fails.

## II. The evidence is sufficient to support McGee's conviction

[17] In the alternative, McGee contends the evidence is insufficient to support his conviction.[4] When reviewing sufficiency-of-the-evidence claims, we neither

---

[4] After the State's case in chief, McGee moved for involuntary dismissal under Indiana Trial Rule 41(B), which the trial court denied. McGee then testified in his own defense. In his brief, McGee argues that "[b]ecause the State in its case in chief failed to prove beyond a reasonable doubt th[at] McGee knowingly or intentionally possessed a machine gun, McGee's motion for involuntary dismissal should have been granted and his conviction should be vacated." Appellant's Br. pp. 19-20. Because McGee presented evidence after the court denied his motion, he can't challenge the denial on appeal. *See Cox v. State*, 19 N.E.3d 287, 290

reweigh the evidence nor judge the credibility of witnesses. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We only consider the evidence supporting the judgment and any reasonable inferences that can be drawn from the evidence. *Id.* A judgment will be affirmed if there is substantial evidence of probative value to support each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[18] McGee acknowledges that his Glock 22 with the switch qualifies as a machine gun under Indiana law. He argues that the evidence is insufficient to prove he **knew** the switch made his gun a machine gun. Knowledge and intent are both mental states and, absent an admission by the defendant, the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence. *A.W. v. State*, 229 N.E.3d 1060, 1064 (Ind. 2024). Here, a reasonable inference from the evidence presented at trial is that McGee knew his gun was a machine gun. McGee bought the gun the day before his arrest. The switch was attached to the gun when he bought it, and the seller told him "what it was." When asked what a switch does, McGee testified that it "make[s] your gun shoot fast basically." Although McGee maintained that he didn't know a switch makes a gun fire multiple bullets with the single pull of a trigger, the trial court did not believe him, explaining, "He understood there was something on there that was going to amplify the abilities of that gun to fire in more than a . . .

(Ind. Ct. App. 2014). We therefore address this issue as a challenge to the sufficiency of the evidence presented at trial.

semi-automatic function. I believe that . . . meets the element of knowingly." McGee is simply asking us to reweigh the evidence, which we don't do.

[19] McGee cites our Supreme Court's decision in *A.W.*, which affirmed a juvenile's delinquency adjudication for Level 5 felony possession of a machine gun. Specifically, the Court found that it was a "close call" as to whether the juvenile knew his handgun with a Glock switch was a machine gun but affirmed his adjudication based on his "abrupt flight" from the traffic stop. *Id.* at 1065. Here, unlike *A.W.*, McGee made statements both on the scene and at trial that go directly to his knowledge. This case is not close like *A.W.*

[20] The evidence is sufficient to prove McGee knew the switch made his gun a machine gun.

[21] Affirmed.

Tavitas, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Jan B. Berg
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana